UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

BANK OF AMERICA, N.A.,                :

                Plaintiff,            :

     -against-                            :     Civ. Action No. 07 CIV 7064

CREDIT SUISSE INTERNATIONAL,         :

                Defendant.            :

------------------------------------------------------------x

JUDGE DANIELS

## COMPLAINT

Plaintiff Bank of America, N.A., by its undersigned counsel, as and for its Complaint herein, respectfully alleges as follows:

### Nature of the Action

1. This is an action for contract reformation and for breach of contract. On January 25, 2007, plaintiff Bank of America, N.A. ("BANA"), entered into a credit default swap contract (the "Swap Contract") with defendant Credit Suisse International ("CSI") respecting an underlying risk designated as ABX.HE.BBB-.07-1 (the "Index"). The binding Swap Contract was formed in an unremarkable manner, by a trader for BANA and a trader for CSI, respectively, whose offer and acceptance took the form of written "instant messages" ("IM's") conveyed back and forth over the Bloomberg system. These authorized parties unequivocally agreed that CSI was the buyer of the Index and BANA was the seller of the Index pursuant to the Swap Contract, and all other material terms were likewise agreed upon.

2. The nature of a credit default swap contract of the type at issue in this case is that the seller of the Index, here BANA, is actually a buyer of

protection from the buyer of the Index, here CSI, on the reference obligations comprising the Index. In consideration of receiving that protection, the seller of the Index (BANA) makes periodic payments to the Index buyer (CSI). The foregoing economic terms and contractual terminology are standard in these contracts; and there was and is no doubt whatsoever but that the traders for BANA and CSI, respectively, in forming the Swap Contract, had mutually agreed that BANA was the Index seller (hence protection buyer) and that CSI was the Index buyer (and thus the protection seller). But a problem arose after contract formation, when the information that the parties submitted to memorialize the Swap Contract mistakenly reversed the identities of buyer and seller of the Index, so that the written documentation wound up reflecting a transaction that is materially different from the transaction to which the parties actually and unmistakably agreed in their IM's.

3. Subsequent market events have rendered the Swap Contract much more financially advantageous to the seller of the Index (BANA) than the buyer (CSI). In an apparent attempt to exploit a scrivener's error, CSI has taken the unjust position that the parties' erroneous data entry supersedes their actual agreement. BANA accordingly brings this action for reformation of the parties' written contract, to conform that contract to the agreement that in fact was reached between the Index buyer and seller; and for the damages that BANA has sustained or will sustain as a result of CSI's failure to perform the contract to which the parties had actually agreed.

### Parties, Jurisdiction, and Venue

4. Plaintiff BANA is a corporation organized under the laws of the State of Delaware, with its principal place of business in the State of North Carolina. BANA is actively engaged in commercial banking and related financial services, and trades derivative instruments like credit default swaps in the normal course of its business.

5.  Upon information and belief, Defendant CSI is a foreign corporation organized under the laws of the United Kingdom, with its principal place of business in London, England. Upon information and belief, CSI, which is an indirect, wholly-owned subsidiary of Credit Suisse Group, transacts a wide range of business in the financial markets, including the marketplace for derivative instruments such as credit default swaps.

6.  The notional amount of the Swap Contract at issue in this case is $25 million.

7.  This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1332(a)(2), since the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between BANA, a citizen of a State, and CSI, a citizen of a foreign state.

8.  The Swap Contract at issue was negotiated and agreed upon by traders for BANA and CSI, respectively, who were physically located in New York City at the time of the transaction. Venue in this District accordingly is proper pursuant to 28 U.S.C. §1391(a)(2), in that a substantial part of the events giving rise to this claim occurred in this District. Moreover, the parties have consented to venue in this District pursuant to an International Swap Dealers Association, Inc. ("ISDA") Master Agreement between them originally dated as of June 22, 1993 and amended as of September 29, 2005. In that Master Agreement, which applies broadly to swap transactions between them, the parties irrevocably submitted to the jurisdiction of the United States District Court for the Southern District of New York, and waived all objections to personal jurisdiction, or the propriety of venue, in this forum.

### Background Facts

9.  In the afternoon of January 25, 2007, BANA's trader of credit default swaps communicated via the Bloomberg IM system with his counterpart at CSI who, upon information and belief, was similarly a trader of credit default

swaps, with regard to a potential swap agreement respecting the underlying risk on the Index. After some initial communication, BANA's trader wrote to CSI's trader, "u sold 06-2 [a different contract] and bought 07-1 [the Index] right?" CSI's trader wrote back to BANA's:

> i buy $25mm 07-1 bbb- 95-07
> i sell $25mm 06-2 bbb- 91-00

10. BANA's trader confirmed his acceptance of this transaction by writing "gfi," indicating the broker through which the trade would be processed, and CSI's trader wrote back, "yea - cool?" BANA's trader reconfirmed with the word "cool," and thus was the parties' contract formed. CSI bought the risk on $25mm of the 07-1 bbb-, at a price of 95-07. As noted, the parties, in their trader's argot, agreed to send the swap contract through an institutional broker called GFI Securities ("GFI"). They did so, and GFI issued a confirmation to BANA stating that BANA is the seller, and CSI is the buyer, with respect to the Swap Contract. Upon information and belief, GFI sent a similar confirmation to CSI.

11. When financial institutions enter into transactions of this type, they commonly submit them to The Depository Trust & Clearing Corporation ("DTCC") for "clearing," meaning the process by which buy and sell orders are matched, and funds and securities are exchanged. That is what was done in this instance. But as a result of an input error that occurred after the Swap Contract was made and confirmed by the traders as described above, the trade was reported erroneously to DTCC by BANA as a purchase by BANA, rather than the sale it in fact was. Upon information and belief, CSI also (correctly) reported to DTCC that it, CSI, was the buyer, as in fact CSI was. This pair of non-matching inputs (*i.e.*, two parties purporting to be buyers in the same swap contract) created a situation known as a "break," whereby DTCC had two parties whose inputs indicated, implausibly, that they both were buyers with

respect to the same swap contract, when in fact CSI was the buyer and BANA was the seller.

12. When this break was first called to the attention of BANA's derivatives documentation group (in effect, an administrative department) on or about January 29, 2007, the documentation group, without checking with BANA's traders, and based upon the erroneous input that had created the break in the first place, mistakenly assumed that BANA was the buyer, and merely asked CSI to verify that assumption instead of investigating its accuracy. Upon information and belief, and for reasons that are unknown, CSI then changed the information that it had transmitted to DTCC, switching itself around from buyer to seller with respect to the Swap Contract, even though the parties' clear and unequivocal agreement on January 25, 2007 was that BANA was the seller and CSI was the buyer. Since this inaccurate new report by CSI appeared to DTCC to eliminate the break even though the new report was counter-factual, the trade was confirmed by DTCC as a sale by CSI to BANA. But in fact, the trade as actually agreed to between CSI and BANA was the other way around.

13. On February 6, 2007, BANA discovered the erroneous nature of these inputs to DTCC and gave notice to CSI that the DTCC confirmation of the transaction was backwards. BANA repeated this notice to CSI on February 7, 2007 and on numerous occasions thereafter. BANA also attempted to perform its obligations as seller of the Index by tendering payments when due to CSI (as explained earlier, in a credit default swap the seller of the risk makes periodic payments to the buyer for protection against the risk). Despite the fact that there can be no reasonable dispute but that the DTCC confirmation of the direction of this transaction was and is erroneous, and that the parties actually agreed that BANA was the seller and CSI the buyer of the Index, CSI has failed and refused to correct the erroneous DTCC confirmation.

14. Because of movements in the financial markets after trade date January 25, 2007, the buyer of the Index has an unrealized loss well in excess of ten million dollars. Accordingly, it is of considerable financial consequence that the writings associated with the parties' agreement be reformed so that they correctly reflect what that agreement actually was; specifically, that the buyer of the Index was, and is, defendant CSI.

### First Cause of Action (Reformation of Contract)

15. Plaintiff repeats and realleges Paragraphs 1 through 14 hereof as though the same were fully set forth herein.

16. Pursuant to the applicable service agreements between DTCC and its users, transaction records that are confirmed by DTCC serve as the written memorialization of the parties' agreement, just as if buyer and seller, having entered into a binding oral agreement on their terms of sale, wrote out and signed a document setting forth those terms. But in this case that written instrument, as it currently stands, does not embody the true agreement as mutually intended by BANA and CSI when they formed the Swap Contract on January 25, 2007. Under these circumstances, the law requires reformation.

17. There was no mistake with regard to the contract that was made on January 25, 2007. BANA was the seller, and CSI was the buyer, of the Index. The mistake occurred in the reduction of that agreement to writing, when inputs were erroneously submitted that caused DTCC to confirm the transaction backwards compared to what it actually was.

18. Where there is no mistake about the actual underlying agreement, and the only mistake alleged is in the reduction of that agreement to writing, such mistake of the scrivener, or of either party, no matter how it occurred, may be corrected. In such a case, it is essential that the written instrument be reformed so as to conform it to the oral agreement (or in this case the agreement reflected in the IM's) that it is supposed to embody.

19. DTCC procedures permit the parties, by joint action, to correct erroneous transaction records after they have been confirmed, analogously to the way parties may rewrite any other written contract containing an error. Accordingly, plaintiff BANA seeks a judgment of this Court directing that the parties reform their written instrument, via instruction to DTCC, so as to conform it to their actual agreement, whereby BANA was the seller and CSI the buyer of $25 million notional amount of risk on the Index.

### Second Cause of Action (Breach of Contract)

20. Plaintiff repeats and realleges Paragraphs 1 through 19 hereof as though the same were fully set forth herein.

21. In addition to its claim for reformation of the parties' written instrument to make it reflect the actual terms of the parties' agreement, plaintiff BANA is entitled to recover all damages which it has sustained or will in the future sustain as a result of CSI's failure to perform the agreement that it made with BANA on January 25, 2007.

22. As described hereinabove, on trade date January 25, 2007, BANA and CSI entered into a binding agreement for BANA to sell, and CSI to buy, $25 million notional amount of risk on the Index. Plaintiff BANA has tendered to CSI full performance of all of BANA's obligations as seller pursuant to the terms of that agreement. CSI has failed and refused to perform its obligations as buyer and has repudiated its obligations.

23. The loss associated with the Index buyer's position in the disputed Swap Contract is currently believed to be well in excess of $10 million. If for any reason reformation of the written agreement pursuant to the First Cause of Action does not afford plaintiff full relief from all harm suffered as a result of CSI's failure to honor the parties' actual agreement as described herein, then plaintiff is entitled to damages, in an amount to be established upon a trial of the merits, for all losses it has sustained or may sustain (including not only out of

pocket damages but also damages representing the benefit of its bargain as the Index seller in the Swap Contract), as a result of defendant's failure to honor its obligations as buyer in the Swap Contract at issue.

WHEREFORE, Plaintiff Bank of America, N.A., demands judgment against defendant Credit Suisse International, as follows:

    a.    Pursuant to the First Cause of Action, for an order of this Court directing that the parties' transaction records with DTCC be reformed to record plaintiff BANA as the seller and defendant CSI as the buyer of the risk on $25 million notional amount of the index identified as ABX.HE.BB-.07.1, as traded on trade date January 25, 2007;

    b.    Pursuant to the Second Cause of Action, for damages in an amount to be established upon a trial of the merits, representing all financial losses and costs incurred by plaintiff that were occasioned by defendant's breach of contract, to the extent that any such damages are not fully obviated via contract reformation;

    c.    For all costs of this action, including plaintiff's reasonable attorney's fees; and

    d.    For such further relief as the Court may deem just and proper.

Dated: New York, New York
August 8, 2007

*[signature]*
LLOYD S. CLAREMAN
LC-8385
121 East 61st Street
New York, New York 10065
Tel. No. (212) 751-1585
Fax No. (212) 838-0814
lloyd.clareman@clareman.com

Attorney for Plaintiff
Bank of America, N.A.

9